Robert E. Sheridan
Jeffrey M. Roth
Emma L. Mediak
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Telephone (406) 523-2500
Telefax (406) 523-2595
resheridan@garlington.com
jmroth@garlington.com
elmediak@garlington.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES ANTIMONY CORPORATION, a Montana Corporation,<br><br>Plaintiff,<br><br>v.<br><br>HERBERT A. DENTON, and PROVIDENCE CAPITAL, INC., a Delaware Corporation, and JOHN DOES 1-10,<br><br>Defendants. | PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiff United States Antimony Corporation ("U.S. Antimony"), by and through its counsel of record, Garlington, Lohn & Robinson, PLLP, alleges the

1

1871982

following:

## Jurisdiction and Venue

1. This Court has jurisdiction of this matter on the following grounds and for the reasons hereinafter set forth.

2. Plaintiff U.S. Antimony was at all times referenced in this Complaint, and still is, a corporation incorporated under the laws of the State of Montana, and a citizen of the State of Montana, with its principal place of business in Sanders County, Montana.

3. Defendant Herbert A. Denton ("Denton") was, at all times referenced in this Complaint, and still is, a resident of the State of New York. Defendant Providence Capital, Inc. ("Providence") is a corporation incorporated under the laws of the State of Delaware and was not, and is not, a citizen of the State of Montana, wherein this action is brought.

4. This Court has jurisdiction of this matter under 28 U.S.C. § 1331 and § 15 U.S.C. 78(aa) for violations of the proxy rules of the Securities Exchange Act of 1934 ("Securities Exchange Act") pursuant to § 15 U.S.C. §§ 78(n), and the rules and regulations promulgated thereunder including 17 C.F.R. 240.14a-2 and a-3.

5. The Court also has original jurisdiction under the provisions of 28 U.S.C. § 1332, in that it is a civil action wherein the matter in controversy

exceeds the sum or value of Seventy Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

6. Defendants John Does 1-10 are not residents of the State of Montana.

7. Venue in this district is proper under 28 U.S.C. § 1391(b).  U.S. Antimony resides within the Missoula Division, and the contracts at issue stipulate the laws of the State of Montana apply and any legal action that arises shall proceed in the State of Montana.

8. U.S. Antimony has notified the United States Securities and Exchange Commission ("SEC") of the allegations set forth herein, but the SEC has advised U.S. Antimony that it cannot offer any immediate assistance.

## Allegations of Fact Common to all Claims

**U.S. Antimony**

9. U.S. Antimony is a natural resource company that has produced antimony products since 1969.  It is a fully integrated mining, transportation, milling, smelting, and marketing company.

10. U.S. Antimony operates the only significant antimony smelter in the United States of America and is in a "sold out" condition.  Its operations also include silver and gold mining on various properties in Mexico that work in conjunction with a smelter and three mills located there.  U.S. Antimony further

owns a zeolite mine in Idaho.  All properties are in production.

11. Operation of U.S. Antimony's assets requires specialized backgrounds in metallurgy, chemistry, Mexican Law, Spanish, milling, mining, and practical experience in all aspects of plant management and equipment.

12. U.S. Antimony is listed on the New York Stock Exchange (UAMY) with 62 million shares outstanding.

13. John C. Lawrence founded U.S. Antimony and continues to work as its Chief Executive Officer and President.

14. U.S. Antimony's board of directors has six directors.  At each annual meeting, U.S. Antimony holds elections for all six director positions.

15. U.S. Antimony is currently scheduled to have its annual meeting on December 12, 2015 in Spokane, Washington.  The annual meeting will include election of the director positions.

16. U.S. Antimony has appropriately provided the requisite notice and disclosure to the SEC regarding its annual meeting scheduled for December 12, 2015.

**Relationship with Defendants**

17. Beginning in 2012, U.S. Antimony engaged Denton and Providence in a series of annual Consulting Agreements ("Consulting Agreement") to provide investor relations services and general consultation services.  *See, e.g.,* 2015

Consulting Agreement, attached as Ex. A.

18.     The Consulting Agreement provides that Denton and Providence will support U.S. Antimony's officers and directors during all contact with U.S. Antimony's shareholders and investors.  The Consulting Agreement further provides that Denton and Providence shall not interfere with or solicit U.S. Antimony shareholders or proxy shareholders related to a proxy vote without the written permission from U.S. Antimony's president or its board of directors.  The Consulting Agreement also provides that Denton and Providence shall not publish any negative comments relating to U.S. Antimony or its officers and directors.  The Consulting Agreement can be terminated for any conduct by Denton or Providence that is likely to have a material adverse effect upon U.S. Antimony's goodwill or business position.

19.     U.S. Antimony compensated Denton and Providence with a monthly fee for services as well as company shares.

20.     The Consulting Agreement provides for attorneys' fees and reasonable costs for the prevailing party in the event of a proceeding to enforce the Consulting Agreement.

21.     The Consulting Agreement provides that the laws of the State of Montana apply and that any proceeding to enforce the Consulting Agreement shall be brought in the State of Montana.

22. The Consulting Agreement further specifically provides that U.S. Antimony has the right to pursue equitable remedies, including an injunction to restrain any breach or threatened breach of the Consulting Agreement.

23. In May 2015, the Board of Directors for U.S. Antimony became aware that Denton and Providence were not complying with the terms of the Consulting Agreement and were working against the interests of U.S. Antimony. In an effort to resolve these problems, U.S. Antimony entered a Settlement Agreement with Denton and Providence on July 27, 2015.  *See* Settlement Agreement attached as Ex. B.  Under the terms of the Settlement Agreement, the parties acknowledged that the Consulting Agreement had been terminated as of May 23, 2015.

24. Under the Settlement Agreement, Denton and Providence received 133,000 shares of U.S. Antimony common stock and the forgiveness of $31,762.55 in debt that Denton owed to U.S. Antimony under a promissory note.

25. In exchange for the consideration in the Settlement Agreement and the ensuing Supplemental Settlement Agreement (attached as Ex. C), Denton confirmed that, among other terms of the agreement, he would not do the following:  1) contact or make any proposal to the company's directors, officers, or shareholders; 2) solicit any shareholders for proxies under Rule 14A of the Securities Exchange Act or make any proposals or offers to the shareholders; 3)

publish any statements or comments about U.S. Antimony; 4) attend or assist any other person in attending or coordinating a U.S. Antimony investor meeting or shareholder meeting; 5) instigate any of the foregoing points; and 6) acquire directly or indirectly any assets or securities of U.S. Antimony.

26. The Settlement Agreement provides that the laws of the State of Montana apply and that any proceeding to enforce its terms shall be brought in Montana.

27. On August 1, 2015, the parties executed a Supplemental Settlement Agreement whereby the parties agreed to modify the consideration provided to Denton and Providence under the Settlement Agreement: Under the modifications, U.S. Antimony provided 100,000 shares of U.S. Antimony common stock instead of 133,000 shares and $25,000 in five monthly installments of $5,000. Denton and Providence further acknowledged that the covenants and terms of the Settlement Agreement remained in effect.

28. Under the terms of the Supplemental Settlement Agreement, Denton and Providence agreed to accept personal service of process of any claims against Denton or Providence by U.S. Antimony through delivery of the proper documents via U.S. Postal Service, FedEx, or UPS. The laws of the State of Montana apply and any action would be brought in a Montana court.

**Defendants' Actions**

29. Contrary to the terms of the Consulting Agreement, the Settlement Agreement, the Supplemental Settlement Agreement and the expectations of U.S. Antimony, Denton and Providence have repeatedly published unauthorized comments regarding the business operations of U.S. Antimony. These comments have been sent to the shareholders and investors of U.S. Antimony. Denton and Providence have repeatedly sent unauthorized publications regarding U.S. Antimony to its shareholders and investors via email, using Denton's "bert@procapnyc.com" email address, among other means of communication.

30. Beginning in 2012 and continuing since that point, Denton and Providence repeatedly communicated with U.S. Antimony's shareholders and investors in this manner to manipulate shareholder and investor expectations and the company's stock price. These communications have included false information and possibly insider trading information in violation of federal securities law.

31. Denton and Providence also communicated with U.S. Antimony shareholders in an effort to obtain as many proxy votes as possible. Denton and Providence have been seeking to amass shareholder proxy votes as part of a scheme to elect directors to the Board of the Directors for U.S. Antimony so that Denton and Providence could control the business operations of U.S. Antimony.

32. Throughout this process Denton and Providence have been

disseminating misinformation in an effort to mislead shareholders and investors. Denton and Providence have been dishonest in their efforts to further their scheme to control the business operations of U.S. Antimony.

33. Thus far in 2015, Denton and Providence have contacted, directly or through brokers and agents, in excess of 25 U.S. Antimony shareholders in relation to soliciting their proxy votes.

34. John Does 1-10 may have aided and abetted Denton and Providence in their efforts to disseminate false information and manipulate shareholder and investor expectations.

### Count I – Violation of Section 14 of the Securities Exchange Act

35. U.S. Antimony incorporates by reference and re-alleges all allegations in the preceding paragraphs.

36. The Securities Exchange Act serves to ensure that shareholders are informed and pertinent company elections and business operations proceed free from the taint of misinformation or improperly manipulated business decisions. Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a), and the rules and regulations promulgated thereunder, govern the solicitation of proxies in this case.

37. More specifically, pursuant to 17 C.F.R. § 240.14a-3, parties are required to make appropriate public disclosures through publicly-filed preliminary proxy statements that adhere to specific reporting requirements.

38.     Parties soliciting proxy votes may avoid the reporting and disclosure requirements of 17 C.F.R. § 240.14a-3 when they solicit not more than ten persons. Under 17 C.F.R. § 240.14a-2, if a party solicits more than ten persons that party is required to comply with 17 C.F.R. § 240.14a-3.

39.     Denton and Providence have not met the reporting and disclosure requirements of 17 C.F.R. § 240.14a-3 in relation to solicitation of proxy votes for U.S. Antimony.  Denton and Providence have not made the required disclosures to the SEC regarding their activities to solicit shareholder proxy votes.

40.     Denton and Providence have solicited more than ten persons for proxy votes for U.S. Antimony.

41.  The violation by Denton and Providence of the applicable laws and regulations of the Securities Exchange Act is illegal and will prevent U.S. Antimony shareholders from acting on an informed basis as to any company elections or matters of company business.

42.     If Denton and Providence are allowed to use illegally obtained proxy votes in violation of the Securities and Exchange Act in a manner that allows them to elect certain directors or to assume control of the business operations of U.S. Antimony, it will cause irreparable harm to U.S. Antimony.  U.S. Antimony is also incurring irreparable harm to U.S. Antimony's goodwill and business reputation through the course of interference with shareholder proxies.

43. To allow Denton and Providence to proceed in violation of the laws and regulations of the Securities Exchange Act so that they can manipulate company elections and business operations will create irreparable damage to U.S. Antimony.

44. U.S. Antimony has also incurred damages through these violations by Denton and Providence.

### Count II - Breach of Contract

45. U.S. Antimony incorporates by reference and re-alleges all allegations in the preceding paragraphs.

46. The Consulting Agreements, Settlement Agreement, and Supplemental Settlement Agreement are valid and enforceable contracts.

47. Denton and Providence have materially breached the terms and conditions of the Consulting Agreements, Settlement Agreement, and Supplemental Settlement Agreement through their interference in shareholder relationships with the company, their interference with the business of U.S. Antimony, their contact with U.S. Antimony's shareholders and investors, and their intentional communication of false and misleading information about U.S. Antimony.

48. U.S. Antimony has been damaged by the breach of the Consulting Agreements, the Settlement Agreement, and the Supplemental Settlement

1871982

Agreement by Denton and Providence. In addition to monetary damages, the actions of Denton and Providence have caused and are continuing to cause irreparable harm to U.S. Antimony's goodwill and business reputation.

49. U.S. Antimony is entitled to a judgment for its damages, prejudgment interest at 10% A.P.R. and its attorneys' fees and costs as allowed under the agreements.

### Count III – Breach of the Obligation of Good Faith and Fair Dealing

50. U.S. Antimony incorporates by reference and re-alleges all allegations in the preceding paragraphs.

51. There is a covenant of good faith and fair dealing implied in each of the contracts between U.S. Antimony and Denton and Providence. The covenant of good faith and fair dealing requires Denton and Providence to conduct themselves with honesty in fact and observe reasonable commercial standards in the trade.

52. The refusal by Denton and Providence to effectuate the purposes of the Consulting Agreements, the Settlement Agreement, and the Supplemental Settlement Agreement was dishonest, outside accepted standards in the trade and constitute a breach of the implied covenant of good faith and fair dealing.

53. U.S. Antimony has been damaged by the breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

54. U.S. Antimony is entitled to judgment for its damages, prejudgment interest at 10% A.P.R. and its attorneys' fees and costs as allowed under the agreements.

## Prayer for Relief

WHEREFORE, Plaintiff U.S. Antimony respectfully prays for the following relief:

1. To prevent a tainted election at the annual meeting, the Court should provide injunctive relief through a preliminary injunction that enjoins Denton and Providence from using any proxy votes at the December 12, 2015 annual meeting.

2. The Court should further enjoin Denton and Providence from any proxy actions and conduct related to soliciting proxies where Denton and Providence are in violation of pertinent federal statutes and regulations.

3. Consistent with the specific terms of the Consulting Agreement, the Settlement Agreement, and the Supplemental Settlement Agreement and the equitable relief specified therein, this Court should enjoin Denton and Providence from further breaching the terms of these agreements as set forth in these agreements.

4. For all damages for the claims set forth herein in an amount to be determined at trial.

5. For attorneys' fees.

6.   For such other and further relief as the Court deems just.

## Demand for Jury Trial

Plaintiff demands a jury trial of all issues in this case.

DATED this 21st day of October, 2015.


           /s/  Jeffrey M. Roth
        Attorneys for Plaintiff